UTICA,
July, 1835.
Gansevoort
v.
Williams.

</div>

---

### Gansevoort *vs.* Williams & Johnson.

Where, upon the renewal of an accommodation note, the borrower presents to his endorser for signature a note to which he has affixed the name of a *firm* of which he has recently become a member as *makers*, the endorser is chargeable with notice that the note is given for the *individual debt* of the borrower, and in case of the dishonor of the note, cannot enforce payment against the other members of the firm.

Under what circumstances a *partner* will be subjected to the payment of a note, given *without his assent* in the name of the firm by his copartner in a matter not relating to the business of the firm, discussed and considered, and the cases upon the subject in the courts *in England* and *in this state* examined and commented upon.

Where one *partner* of a mercantile firm gives a note in the name of the firm for his individual debt, the *assent* of the other partner may be *implied* from facts and circumstances: an *express assent* need not be shown.

THIS was an action of *assumpsit*, tried at the Kings circuit in October, 1833, before the Hon. OGDEN EDWARDS, one of the circuit judges.

UTICA,
July, 1835.

Gansevoort
v.
Williams.

The suit was brought upon a note given by the defendants to J. Denison for $1080, dated 4th January, 1832, payable in ninety days, endorsed to the plaintiff. The origin of the note was as follows: About the first of July, 1830, an *accommodation loan* of $2000 was obtained from the Bank of Albany by the firm of *Denison Williams & Co.*, consisting of Denison Williams, one Smith and one Young; the note was drawn in the name of the *firm* and endorsed by *Joseph Denison*, and by *Peter Gansevoort* the plaintiff in this cause. On 30th September, 1830, the sum of $200 was paid and a new note given for $1800, drawn by *Denison Williams* alone, and endorsed as before by Joseph Denison and Peter Gansevoort, and thus from time to time partial payments were made, and new notes given, by the *same maker* and *same endorsers* until the 6th October, 1831, when a note was given for $1215, to which sum the loan of $2000 had been reduced. When this note was about falling due, *Denison* called on Gansevoort to endorse the note now in suit, who objected to doing so, saying that he did not expect to be obliged to endorse the note again. Denison importuned him, stating that the note was drawn by the firm of *Denison Williams & Co.*, which firm consisted of *Denison Williams* and *Parmenus Johnson*, the latter of whom was a man of property, worth $40,000. Whereupon Gansevoort endorsed the note, which, when it became due, not being paid was protested and and subsequently taken up by Gansevoort and this suit brought thereon. It appeared in evidence that in *September*, 1831, Williams & Johnson formed a partnership to carry on in the city of New-York and in Brooklyn the business of dealers in fur and manufacturers of caps; which partnership was dissolved about the *tenth* day of *January*, 1832; previous however to which dissolution the note in question was given, the name of the firm subscribed to the note being affixed by Denison Williams. Upon these facts being shown on the part of *Johnson*, who alone defended the suit, a mass of testimony was introduced by the plaintiff, from which he contended that the *assent* of Johnson to the giving of the note by Williams in the partnership name might be implied by the jury. The cause was submitted to the jury, who found a verdict for the plain-

tiff for the amount of the note and interest. The defendant moved for a new trial.

*S. P. Staples*, for the defendant.

*P. Gansevoort*, plaintiff in person, contra.

*By the Court*, NELSON, J. It is clear that the debt, to secure the payment of which the note in question was given, was the private debt of Williams, and the plaintiff who had been an endorser previously at the bank for him, must be deemed chargeable with notice of the fact. He knew the paper of the firm was given by Williams for his own debt, when he endorsed this note, and (being obliged to know the law) that it was used for purposes not belonging to the partnership business. He ought not therefore to have confided in it, notwithstanding the strong representations of the agent of Williams, because they amounted to nothing more than the face of the note imported, if genuine, to wit, that all the members of the firm had consented to be responsible for the private debt of one of them. The difficulty is, the member not in fact consenting is unaffected by either the inference thus deducible from the face of the note, or the representations of any other member, unless the plaintiff is a *bona fide* holder.

The English cases upon this subject are not always consistent with themselves ; and even the same court, while they profess to adhere to their general position, namely, that the partner denying the authority of his associate must prove affirmatively that the holder knew the paper was given in a transaction unconnected with the partnership, and also that he did not assent, sometimes substantially disregard the latter qualification of the rule in the application of it to the facts. The case of *Hope* v. *Cust*, before Lord Mansfield in 1774, cited by Lawrence, J. in 1 *East*, 52, is an instance. There one Fordyce, who traded largely in his private capacity, as well as in the business of a banker with others, had considerable dealings in his private capacity with Hope & Co. in Holland, and gave to them a general guaranty in the partnership name, for money due in his separate capacity. The plaintiffs failed

in recovering on the guaranty. Lord Mansfield, in reporting the case to the court of chancery, it being an issue from that court, said he left it to the jury to say, whether under the circumstances the taking of the guaranty was, in respect to the partners, a fair transaction, or covinous, with sufficient notice to the plaintiffs of the injustice and breach of trust Fordyce was guilty of in giving it. *Chitty on Bills*, 33. The case seems to have been put to the jury, from the history given of it, upon the gross negligence of the plaintiffs in not discovering that Fordyce was committing a fraud upon his associates. But it does not appear that there was any affirmative evidence shewing that the other partners had not assented, and that this was known to the plaintiffs. In *Ex parte Bonbonus*, 8 *Ves.* 544, Lord Chancellor Eldon says, in Fordyce's case, Lord Thurlow and the judges had a great deal of conversation upon the law, and they doubted upon the danger of placing every man with whom the paper of a partnership is pledged, at the mercy of one of the partners, with reference to the account he may afterwards give of the transaction. But he says, " there is no doubt now the law has taken that course ; that if, under the circumstances, the party taking the paper can be considered as being advertised in the nature of the transaction, that it was not intended to be a partnership proceeding, as if it was for an antecedent debt, *prima facie* it will not bind them."

The case of *Shirreff and another* v. *Wilks and others*, 1 *East*, 48, is another instance. There the plaintiff, Oct. 1795, sold a quantity of porter to B. & W., partners, which was shipped by them to the West Indies. In April, 1796, R. came into the firm and continued until November following, when it was dissolved. The balance due for the porter, as settled by W., was £78, for which the plaintiffs drew upon the defendants the bill in question, which was accepted by B. in the name of the then firm. The court decided R. was not bound, and Lord Kenyon says, R. had no concern with the matter, and was no debtor of the plaintiffs; that no assent of his was found, and nothing to show that he had any knowledge of the transaction ; that the transaction was fraudulent upon it face.

In *Ridley* v. *Taylor*, 13 *East*, 175, the rule was applied by Lord Ellenborough with more strictness. There he required

something more than the naked fact, that the bill in the name of the firm was given for the private debt of the member who drew it, and that fact known to the plaintiffs. The court would not infer want of authority or fraud upon these facts; and they considered the circumstances of the case of *Shirreff and another* v. *Wilks and another* as having fairly authorized such a presumption, and that it was decided upon that ground. But in *Green* v. *Deakin and others,* 2 *Starkie,* 347, a partnership security (a bill) was given by one member for his private debt to the plaintiff; and although it appeared expressly that the plaintiff was not informed that the associate had not concurred, yet Lord Ellenborough held that the nature of the transaction was intrinsically notice, and he nonsuited him. So in *Wood* v. *Hollenbeck and others, Chitty on Bills,* 33, *note z.,* the action was on a bill against three acceptors, where it appeared they were partners in a tea speculation, and the drawer, a wine merchant, drew it in payment of wine delivered to one of them; the jury were directed, if they found it was drawn without the knowledge or concurrence of the other two, they were not liable, omitting the necessity of bringing home affirmatively notice to the holder. It is not material to look any further into these cases; they will be found stated and referred to in *Chitty on Bills, p.* 29, 33. They all clearly prove, that while the English courts hold to the position that the firm is liable on a bill or note made by one out of the partnership business, unless the holder knows that it was so made and that the other partners did not concur, the frequent practical operation and effect of it under their direction does not essentially differ from the rule as settled in this court. They undoubtedly put the defence of the copartner upon the ground of fraud, committed upon him by his associate and the holder; but this is sometimes inferred from the fact that the bill or note is given for a private debt, and that known to the holder; and at other times further proof is required negativing a presumed concurrence of the copartner.

In this court, the cases are believed to be uniform from that of *Livingston* v. *Hastie,* 2 *Cai.* 246, down to the present time,

UTICA,
July, 1835.

Gansevoort
v.
Williams.

that where a note or other security is given in the name of the firm by *one partner* for his private debt, or in a transaction unconnected with the partnership business, which is the same thing, and known to be so by the person taking it, the other partners are not bound unless they have consented; 11 *Johns. R.* 544. 16 *id.* 34. 19 *id.* 154. 3 *Wend.* 419. 5 *id.* 223. 6 *id.* 619. 7 *id.* 158, 310. *Prima facie*, the execution of the bill or note in the name of the firm by one partner binds the whole. The burden, therefore, of proving a presumptive want of authority, and of course fraud, for that necessarily follows, lies upon the copartners. 11 *Johns. R.* 544. We hold that the fact of the paper of the firm being given out of the partnership business by *one member*, is presumptive evidence of want of authority to bind the *other members* of the firm ; and if the person taking it knows the fact at the time, he is chargeable with notice of want of authority, and guilty of concurring in an attempted fraud upon the other partners. It may be asked, why should the partners be bound at all. when the paper is in fact signed without their authority ? This is no doubt against general principles, and involves the injustice of subjecting a person to answer for an act of another to which he never expressly or impliedly assented. The answer is founded upon the law merchant. By entering into the partnership, each reposes confidence in the other, and constitutes him a general agent as to all the partnership concerns ; and the inconvenience to commerce, if it were necessary that the actual consent of each partner should be obtained, or that it should be ascertained that the transaction was for the benefit of the firm in the ordinary transaction of their business, suggested the rule, that the act of one, when it has the appearance of being on behalf of the firm, is considered the act of the rest ; and whenever a bill is drawn, accepted or endorsed by one of several partners on behalf of the firm during its continuance, which comes into the hands of a *bona fide* holder, the partners are liable to him, though in truth one partner only negotiated the bill for his own benefit, without the consent of the copartners. *Swan and others* v. *Steele*, 7 *East*, 210. *Chitty on Bills*, 30.

There appears never to have been a doubt in England or in this state, in any of the cases, but that all the partners are bound, unless the *bona fides* can be impeached. What shall amount to an impeachment is oftentimes a debateable question, and in England seems to rest very much upon the circumstances of the case. There is more uniformity and precision in the application of the rule here. It is undoubtedly the practice of mercantile firms to endorse the bank paper of each other by the hand of any one of the members. Upon a strict application of the rule in this court, and upon some of the cases in England, such paper would not bind the firm, if the bank had knowledge of the facts. It is not within the purpose and business of a mercantile firm to endorse paper for their neighbors. Such business is not within the contemplation of the partnership, and therefore no authority is to be implied or attached to any one of the members. It might well alarm the mercantile community to lay down the position, that the partnership endorsement of accommodation paper by one of the firm, for any person that might ask him, would be binding upon all, whether the holder knew the facts or not. Even the authority of one partner to sign bills and notes for the firm when interested, is only implied, and may be rebutted by notice. *Chitty on Bills,* 33. It would be a strange implication of authority, where the firm had no interest. But if it should appear that a house was in the habit of endorsing at the bank or elsewhere for another, such general course of dealing would be sufficient evidence of authority from all the members of the firm, and such use of it by one would bind all. *Duncan* v. *Lowndes & Bateman, 3 Campb.* 478. The authority would not flow from the partnership, but from facts and considerations independently of it.

To return from this digression to the case before us, we have already said the plaintiff could not recover, on the ground that he was a *bona fide* endorser for the firm, and have stated the grounds upon which he was not to be viewed in that light. It is however contended by him that there is evidence of *assent* by Johnson, either express or implied. We have seen nothing like express assent, but we cannot say that the jury erred in *implying* assent from the facts and circum-

stances of the case. *Williams'* course of business, and which appeared upon the books of the firm, to which *Johnson* had access, was to pay his private debts out of the proceeds of the firm. This, indeed, must have been expected, because he brought into it all his old stock on hand, and debts due to him as fast as collected. Johnson put in nothing. It further appears that, in a few instances, the paper of the firm was given for his private *liabilities*, under circumstances that might justify the inference of knowledge on the part of Johnson. There is also evidence that during a part of the period of the partnership, Johnson was in constant attendance at the store, participating in the business of it. Lord Eldon, in *Ex parte Bombonus*, says, in many cases of partnership and different private concerns, it is frequently necessary, for the salvation of the partnership, that the private demand of one partner should be satisfied at the moment; for the ruin of one partner would spread to the others, who would rather let him liberate himself by dealing with the firm. We should be unwilling to give this consideration alone any particular weight, because it tends to the conclusion of a general liability of the firm in all cases when used by one of the members. It is, however, a sound observation, and worthy of consideration, when we are endeavoring to ascertain from the course of dealing and practice of the firm, known to all the members, whether an implied assent may be inferred. The act of Williams, in using the name of the firm on this paper, to secure his private debt, is the exercise of an authority very little beyond that of paying like debts out of the proceeds of the store, of which fact the copartner was fully advised, and to which he must be deemed to have consented.

<div align="right">New trial denied.</div>