ELLIOTT *vs.* DUDLEY and BASS, survivors of De Witt.

One partner cannot, by his acts or admissions, bind his copartners, without their assent, for an individual debt of his own.

Where a partner makes a note in his own name, indorses it in the name of the copartnership firm, and turns it out in payment of an individual debt previously existing, to a person who takes it with notice of the circumstances, the indorsee is not a *bona fide* holder.

To render the firm liable, under such circumstances, where there has been no previous *usage* to justify such a use of the partnership name, their subsequent assent must be proved.

Proof of *knowledge* of the transaction, on their part, after it has taken place, and nothing more, is no proof of assent.

They are not bound to deny their liability, until prosecuted as indorsers.

MOTION on the part of the plaintiff, for judgment upon a verdict in his favor, taken subject to the opinion of the court upon a case.

The action was brought to recover the amount due upon a promissory note in the words and figures following:

" *Buffalo, July* 10, 1851.

Ten months after date, I, the subscriber, of Buffalo, state of New York, promise to pay to the order of De Witt, Dudley & Co., eight hundred dollars, at the Commercial Bank of Rochester, with interest, value received.

JAMES V. DE WITT."

(Indorsed) " DE WITT, DUDLEY & CO."

At the trial, which came on at the circuit held in the county of Monroe, in April, 1854, it was proved that the note and the

indorsement were made and executed at the date thereof by James V. De Witt, who was then one of the copartnership firm of De Witt, Dudley & Co., which consisted of said De Witt and these defendants ; that they were engaged in the business of casting stoves and iron ware, and vending hardware and stoves at a stove warehouse kept by them in the city of Buffalo. That De Witt died after the commencement of this action. That the note was duly presented, at the proper time and place, for payment, and payment refused, and that due notice was thereupon given to the indorsers. The other material facts are stated in the opinion of the court.

*J. H. Martindale*, for the plaintiff.

*A. Sawin*, for the defendants.

*By the Court*, WELLES, J. The note in question was given by De Witt for a separate pre-existing debt of his own, with which it does not appear the defendants Dudley and Bass had any connection. The note was made by De Witt to the order of De Witt, Dudley & Co., a copartnership firm consisting of the defendants Dudley and Bass and the said De Witt, and at the same time De Witt indorsed the note with the name of the said firm. There is no legal evidence tending to show that at the time such indorsement was made by De Witt, he was authorized by his partners or either of them to do so, or that they knew of it at the time it was done. On the contrary, it appears that they were not present at the transaction. The evidence that when Kelly, the plaintiff's clerk and agent, inquired if De Witt would have the right to indorse the firm name, De Witt replied that such was the understanding between him and his partners, was clearly inadmissible, and must now be excluded from consideration. It is impossible for one partner, by his acts or admissions, to bind his copartners without their assent, express or implied, for an individual debt of his own. The plaintiff does not occupy the position of a *bona fide* indorsee, because the case shows that the note was taken by his clerk and agent

Elliott *v.* Dudley.

for a debt previously existing, and owing by De Witt to the plaintiff.

The case, thus far stated, entirely fails of showing any liability on the part of the defendants Dudley and Bass to the plaintiff, on the note. There are other facts, however, upon which the plaintiff claims that these defendants subsequently ratified the use of the firm name as indorsed upon the note.

The only facts in the case in addition to those above stated, of any importance, are that at the time of giving the note, the said firm of De Witt, Dudley & Co. were engaged in the business of casting stoves and iron ware and vending hardware and stoves, at a stove warehouse kept by them in the city of Buffalo. That the note in question was made and executed at the place of business of the defendant in Buffalo and delivered to James H. Kelly, the clerk and agent of the plaintiff, for the plaintiff. That neither Dudley nor Bass were present, but the book-keeper of De Witt, Dudley & Co. was present. That the note was immediately entered in the bill-book of the said copartnership and charged on the books of the copartnership to De Witt individually by the book-keeper; at the same time Kelly took De Witt's due-bill to the plaintiff for $388, payable in castings at the furnace of the defendants for a previous debt, being the balance of the same debt for which the note in question was given. That the defendant Bass returned to Buffalo in the same week, and the defendant Dudley, in five or six weeks thereafter, and when they returned they attended personally at the store where the note was made and the books of the copartnership were kept in which said note was entered and charged as aforesaid. The partnership was dissolved November 13th, 1851.

In all this there is certainly no positive evidence of assent on the part of Dudley and Bass, and, we think, nothing from which a jury would have been justified in implying one. The transaction is isolated, entirely unconnected with any other of a similar character. There is no evidence of any usage or course of dealing of the firm of De Witt, Dudley & Co. upon which such an implication could be founded. Assuming that a jury would be justified in the inference that when Dudley and Bass

returned and attended personally at the store where the books containing the entry and charge of the note in question were kept, saw such entry and charge, and thus became acquainted with what had been done, it does not, as we think, tend to establish their assent to the use of the partnership name upon the note, by De Witt. Such assent is an affirmative fact, without which there is no pretense for a recovery, and which the plaintiff is bound to prove. Proof of knowledge of the transaction on the part of Dudley and Bass after it had taken place, and nothing more, is no proof of assent. Instead of their being bound to disown their liability, as contended for, the plaintiff was bound to secure their assent to what De Witt, their partner, had done in reference to the note, before he can ask to have them charged with the payment of it. There was no liability for them to disown, and nothing appears to have taken place to estop them from denying it when prosecuted. The case of *Gansevoort* v. *Williams*, (14 *Wend.* 133,) is very much relied upon by the plaintiff's counsel. In that case, it will be seen that after evidence had been given on the part of Johnson, who was sought to be charged as a partner of Williams, sufficient to show that the note was made by the latter for an individual debt of his own, the case proceeds to state, that " upon these facts being shown on the part of Johnson, who alone defended the suit, a mass of testimony was introduced by the plaintiff from which he contended that the *assent* of Johnson to the giving of the note by Williams, in the partnership name, might be implied by the jury." The evidence on the subject of Johnson's assent is not stated, except so far as can be gathered from the opinion of the court. Nelson, justice, in delivering the opinion, says among other things, " It is however contended by him [the plaintiff] that there is evidence of *assent* by Johnson, either express or implied. We have seen nothing like express assent, but we cannot say the jury erred in *implying* assent, from the facts and circumstances of the case. Williams' course of business, and which appeared upon the books of the firm, to which Johnson had access, was to pay his private debts out of the proceeds of the firm. This indeed must have been expected, because he brought into it, all his old stock

on hand, and debts due to him, as fast as collected. Johnson paid nothing. It further appeared that, in a few instances, the paper of the firm was given for his private liabilities, under circumstances that might justify the inference of knowledge on the part of Johnson. There is also evidence that during a part of the period of the partnership Johnson was in constant attendance at the store, participating in the business of it." Here, it will be perceived, there was not only knowledge on the part of Johnson, but evidence of usage, and a course of business by Williams, with Johnson's knowledge, from which Johnson's assent might fairly be implied; all which is wanting in the present case.

The theory upon which one partner may bind his copartners by the use of the partnership name upon commercial paper, or other parol contracts, is that a confidence is reposed which amounts to a power or authority to each partner to bind the firm by contracts in matters relating to the business of the partnership. But this power is circumscribed and limited to contracts within the scope of the partnership business. The power does not exist beyond such transactions, although, for reasons of public policy, in the case of commercial paper in the hands of *bona fide* holders, the partners will all be held liable, where the partnership name has been used, without reference to the question whether the paper was made in the course of the partnership business, or on account of an individual member or otherwise.

Where one member of the partnership uses the name of the firm, he assumes to exercise power for his copartners. If he acts without such power at the time, it is nevertheless competent for the other members of the firm afterwards to ratify what had been done in their name without authority, and thus bind the firm, on the same principle that a principal may always confirm an unauthorized act of his agent. But simply giving evidence to raise the presumption of *knowledge* that the act had been done in his name although without his authority, can never amount to proof of a ratification. And that was all that was done in this case. The *ratification* of an unauthorized act is the thing, and the only thing which creates the obligation; and to

say that knowledge simply, without any thing else, in the case supposed, creates an obligation, would be carrying the doctrine beyond any precedent, and would be unsupported by any just principle.

We think, for these reasons, there should be judgment for the defendants.

Ordered accordingly.

[MONROE GENERAL TERM, March 5, 1855. *Johnson, Wells* and *T. R. Strong,* Justices.]