GEORGE A. OSGOOD *et al.* As receivers of the Columbian Insurance Company, Appellants, *against* FRANK GLOVER (Impleaded), Respondent.

(Decided January 7th, 1878.)

Where a partner in the ordinary course of business insures property represented to the insurer to belong to the firm, and gives in payment of the premium the firm's promissory note, the other partners are liable on the note, even though the note was given without their consent or knowledge, and in violation of copartnership articles, if there was nothing in the nature of the transaction notifying the insurer of the latter facts.

Where an application was made to an insurance company, through a broker, for insurance, on account of a firm of merchants, on a ship, the loss, if any, payable to the firm, and the company, upon the receipt of the firm's note signed in the name of the firm by one of the partners, issued a policy upon the ship as the property of the firm,—*Held*, that the company were not put upon inquiry as to whether or not the firm owned the ship, or whether or not the insurance was a firm transaction, and that the note bound all the partners, whether part owners of the ship or not.

*It seems,* that the rule as to the liability of a partner on a firm note, given without his consent or knowledge, in a transaction not connected with the business of the firm, by another partner, is, that if the party taking the note is notified by the nature of the transaction that it is not connected with partnership matters, the partner, not consenting and having no knowledge is not bound.

*It seems* that a wager policy of insurance, even upon a maritime risk, is void.

The authorities as to notes given by a partner in transactions not connected with the business of the firm, collected and discussed by CHARLES P. DALY, Chief Justice.

APPEAL by plaintiff from a judgment for costs entered in favor of defendant, Glover, upon a dismissal of the complaint as to him, ordered at the trial of the action before Judge JOSEPH F. DALY, and a jury.

The action was against Francisco J. Cortissoz, William

St. Anna and Frank Glover, comprising the firm of Cortissoz, St. Anna & Co., on a promissory note made by said firm to their own order, and indorsed to the Columbian Insurance Company. The plaintiffs were the receivers of that company.

The respondent, Glover, defended on the ground that the note had been given without his consent or authority, in violation of the copartnership articles, and in a transaction outside of the firm's business, and also on the ground that the note had been given in payment of a premium on a policy of insurance with the company of which the plaintiffs were receivers, and that the policy had been cancelled about twenty days after the date of the note. The facts shown on the trial in support of this defense are stated in the opinion.

*Dudley Field*, for appellant.

*Francis Byrne*, for respondent.

CHARLES P. DALY, Chief Justice.—The note was given in what purported to be a transaction of the firm. An application was made to the company by a broker, that an insurance was wanted by the firm, upon their own account, for $11,000, on the brig Milo, loss, if any, payable to the firm. A policy of insurance upon the vessel was, upon receiving the application, issued to the firm, and the note in suit, which was signed by one of the partners, St. Anna, in the name of the firm, was given to the company for the premium.

The vessel was the individual property of Cortissoz, one of the partners, and for several successive years had previously been insured in his name, although it does not appear where, or that the fact was known to the company. Cortissoz and St. Anna had been previously in business, under the firm name of Cortissoz & St. Anna; but a short time before the policy was applied for Glover became a partner, and the firm name was changed to Cortissoz, St. Anna & Co. The partnership was formed to do business as importers and dealers in brandies, wines and liquors; and as between

themselves, it was agreed that no contract or engagement should be entered into for the business of the copartnership without the consent of all the parties to it. The firm had no interest in the vessel, or any merchandise on board of her, nor dealings of any kind with, nor in respect to her. Glover knew nothing of this insurance, or of the note that had been given for the premium, until long after the failure of the company ; and the application for the insurance on behalf of the partnership, and the giving of the note of the firm by St. Anna for the premium, was consequently without the authority of Glover, as the transaction was one not connected with the business of the firm, and of which at the time he had no knowledge.

The rule as respects the liability of copartners upon a note of the firm, given by one of the partners in a transaction not connected with its business, and given without the knowledge or consent of the partner sought to be charged, is the one laid down by Lord Eldon in *Ex parte Bonbonus* (8 Ves. 545), that if the party taking the paper can be considered as "advertised," from the nature of the transaction, that it is not in a matter connected with the partnership, as where it is given for an antecedent debt, the partnership is not bound. After declaring that he could not accede to what was sought to be maintained in that case, that the partnership is not bound where one partner pledges the credit of the firm for his own accommodation, and the money obtained is applied exclusively to his use, Lord Eldon said that if it is manifest to the person advancing the money that it is for the partner's individual use, so that it is against good faith that he should pledge the credit of the firm, then the creditor must show that the partner had authority in the particular transaction to bind the partnership ; but if it is in the ordinary course of commercial transactions, as upon a discount, it would be monstrous to hold that the borrowing of the money, upon a bill of exchange, pledging the partnership without any knowledge on the bankers that it is a separate transaction, will not bind the firm, because the money does not go to it, but to the use of the individual partner.

The rule may be further illustrated by the leading case in this State of *Livingston* v. *Roosevelt* (4 Johns. 251), in which it was held that the partnership was not bound upon this state of facts; C. C. & C. J. Roosevelt entered into copartnership under the firm name of C. C. Roosevelt & Co., in the sugar refining business, and the fact that they had formed a partnership to carry on that business, and that their sugar house was in Thames street, was published for two weeks successively in two newspapers, which, it was shown, were taken by the creditor during the time of the advertisement. C. J. Roosevelt purchased of the plaintiff 20 pipes of brandy, and the bill was made out by the plaintiff's clerk to him. The brandy was entered by the plaintiff at the Custom House in C. J. Roosevelt's name to obtain the usual debenture; in which the plaintiff made oath that the sale was to C. J. Roosevelt, and the brandy was exported in a vessel belonging to him. For the purchase a note was given by C. J. Roosevelt, signed by him as maker, but upon which he indorsed the name of the firm, and the note was given, not at the firm's place of business (the sugar house), but at the dwelling-house of C. J. Roosevelt. The plaintiff's clerk understood that the brandy was sold to the partnership, but it appeared that nothing was said at the time of the sale on whose account the purchase was made; all that was proved being, that it was made by and with C. J. Roosevelt without the knowledge or consent of his copartner, and that it was understood between the plaintiff and C. J. Roosevelt, that the partnership obligation was to be given, as it was given, by indorsing the name of the firm on the note made by him.

The court held that as C. J. Roosevelt gave his own note at his own house and not at the counting-house of the partnership, with the indorsement of the firm as collateral security, it was inconsistent with the idea of a sale to the firm, and as the plaintiff himself made oath at the Custom House that the sale was made to C. J. Roosevelt, that he thereby gave the highest and most satisfactory evidence of his understanding of the sale; the court holding that the fair conclusion was, that the plaintiff made the contract with C. J.

Roosevelt individually, and that he wished to obtain the security of the partnership for the payment of what was an individual obligation. This was the conclusion of Van Ness, J., who delivered the opinion of the court; in which conclusion, Kent, Ch. J., concurred, upon the ground that the plaintiff took a partnership security for what he actually knew at the time was the private debt of the particular partner, or under circumstances sufficient to charge him with constructive knowledge of that fact. He held that the inevitable inference from the testimony was, that the plaintiff or his agent actually knew that the purchase was not a partnership concern, and that the partnership was required merely as security; or at least, that the facts disclosed amounted to constructive notice; that it was the individual transaction of C. J. Roosevelt; and he observed that the question in all cases (whether the partnership be special or general) is a question of notice, express or constructive.

All the cases, so far as I have examined them, in which it is held that the firm are not liable upon a partnership note, given by one partner in an individual transaction of his own, having no connection with the business of the firm, have been cases where the creditor either knew it was the individual transaction of the partner giving the note, or where the circumstances were such as to fairly impose upon him the inquiry whether the transaction was in the business of the firm or assented to by the other members. Such, at least, are all the cases referred to in the defendant's points.

In *Williams* v. *Walbridge* (3 Wend. 415), and *Gansevoort* v. *Williams* (14 id. 133), the note or indorsement of the firm was given by the partner for an individual debt, due by him to the plaintiff, without the knowledge or consent of his copartners. In the *Bank of Rochester* v. *Bowen* (7 Wend. 158), the bank knew that the loan for which the partner gave the firm notes was for his individual benefit, and the money in that case was placed to his individual credit in the bank and drawn out upon his check. In *Mercein* v. *Mack* (10 Wend. 461), the indorsement of the firm was given by

one partner to pay the debt of a third person, without the knowledge or consent of the other partner.

In *Wilson* v. *Williams* (14 Wend. 156), the plaintiff knew that the notes were not made on account of any transaction of the firm, but for the debt or benefit of the maker, who was one of the partners, and were indorsed in the name of the firm by another of the partners; in which the court held that to charge the remaining partner, it was incumbent upon the plaintiff to show that the notes had been indorsed with his assent.

In *Joyce* v. *Williams* (14 Wend. 141), a draft was drawn upon the firm for goods sold by the plaintiff to a third party, which was accepted by one of the members of the firm. The goods were charged by the plaintiff to the third party, and the draft with the acceptance thereon was taken by him in payment. The court held that the plaintiff could not recover against all the partners, as he knew it was not given for any partnership debt or transaction, without proving that all the partners had assented to it.

In *Gansevoort* v. *Williams* (14 Wend. 137), Nelson, J., declared that the cases from *Livingston* v. *Hastie* (2 Caines, 246), down to that time, 1835, were uniform; that where a note or other security is given in the name of the firm by one partner for his private debt, or in a transaction unconnected with the partnership business, and *known to be so by the person taking it*, the other partners are not bound unless they have consented. And in respect to the alleged injustice of subjecting one partner to liability for the act of another to which he never expressly or impliedly consented, he said: "The answer is found upon the law merchant. By entering into partnership each reposes confidence in the other, and constitutes him a general agent as to all the partnership concerns; and the inconvenience to commerce, if it were necessary that the actual consent of each partner should be obtained, or that it should be ascertained that the transaction was for the benefit of the firm in the ordinary transactions of its business, suggested the rule that the act of one, *when it has the appearance of being on behalf of the firm*, is consid-

ered the act of the rest; and whenever a bill is drawn, accepted or indorsed by one of several partners, on behalf of the firm, during its continuance, which comes into the hands of a *bona fide* holder, the partners are liable to him, though in truth one partner only negotiated the bill for his own benefit without the consent of the copartners."

What was there said applies to the present case. The insurance company were *bona fide* holders of the note of the firm. It was given to them in payment of the premium upon a policy of insurance upon the vessel which the company insured upon the account of the firm and made the loss payable to them, as requested. The application was made to them in the ordinary course of business, and they are not to be charged with knowledge of the fact that the vessel belonged to one of the partners only, and that the firm as such, had nothing to do with it. There was nothing to put them upon inquiry as to the ownership, or which imposed upon them the duty, in good faith, of ascertaining whether the firm had any interest in the vessel, or had consented to an insurance of her in their name. The company were not bound to inquire as to the nature of the business which the firm carried on, or if they knew it, they may very well have assumed, when applied to to insure a vessel on their account, that although their business was importing or dealing in liquors they may have owned a vessel, or had an interest in her.

It would be very unreasonable to hold that when a member of a commercial firm sends a broker to an insurance company to obtain an insurance upon a vessel, on account of the firm, that it is the duty of the company, before effecting the insurance, to inquire into the nature of the business of the firm, to see whether the ownership of a vessel, or the having an interest in it, is, or is not, compatible with the business which the firm is engaged in; or to ascertain, before issuing the policy, whether all the partners consent to the insurance and agree to pay the premium. Actual notice that the vessel belonged to one of the firm only, or circumstances equivalent to constructive notice of that fact, would

be quite another matter; but nothing of the kind was shown in this case. It was an application in the ordinary course of business, on behalf of the firm, for an insurance upon property upon their account, which was represented to belong to them, and imposed upon the company no obligation to inquire, when receiving the firm note for the premium, whether the firm owned the vessel or not. (*Mechanics' Bk.,. &c.* v. *Foster,* 44 Barb. 87; *Connecticut River R. R.* v. *French,* 6 Allen, 313; *Warren* v. *French,* id. 317.)

In *Hooper* v. *Lusby* (4 Camp. 66), the defendants, who were partners, doing business under a general firm name, were also part owners in two ships. having each separate shares. One of the partners, and an owner of a separate share, obtained a policy of insurance upon the vessels in the name of the firm, and it was held that the firm was bound for the payment of the premium. " I allow," said Lord Ellenborough, " that one part owner has no implied authority to insure for the others, but I take the distinction to be between part owners and partners." The defendants, he said, carried on business together under a firm name, and the insurances were ordered in the name and on account of the firm. The fact that they were doing business together as partners, under a general name, was deemed sufficient. to render them liable for the premium of a policy effected by one of them upon property which each owned separately and not as partners; and the case could be sustained only on the ground—(*Bell* v. *Humphries,* 2 Stark R. 354; *French* v. *Foulston,* 5 Burr. 2727)—that when a partner, in the ordinary course of business, insures property represented to the insurer to belong to the firm, the firm are answerable for the payment of the premium, which is the present case.

The respondent is not correct in the assumption that there could be no recovery under this policy, as the firm had no interest in the vessel. If it were not good as a wager policy, being a maritime risk—(*Juliel* v. *Church,* 2 Johns. Cases, 333; *Freeman* v. *Fulton Life Ins. Co.,* 38 Barb. 258)— which probably it was not, the present tendency of the law

being adverse to such policies (*Buchanan* v. *Ocean Ins. Co.*, 6 Cow. 318 ; 1 Phillips on Insurance, § 5, and note 3, § 211), one of the partners, at least, Cortissoz, who was the owner of the vessel, could recover upon it in the event of loss, as the real party in interest. (*Lane* v. *Columbian Ins. Co.*, 2 Code Reporter, 65 ; *Braik* v. *Douglas*, 4 My. & Craig, 320.)

The policy was never cancelled, which can be done only by the mutual consent of the insurer and the assured. (*Hill* v. *Patten*, 8 East. 373 ; *French* v. *Patten*, 1 Camp. 73 ; *Campbell* v. *Adams*, 38 Barb. 133.) All that appears is that the broker, about twenty days after giving the premium note, called upon the company, and notified the officers to cancel the policy ; and by their directions wrote and signed a request to that effect, and left it with the company. It does not appear that any action was taken upon the request by the company, and simply leaving such a request with its officer will not cancel the policy and entitle the insured to a return of the premium note.

The judgment below should be reversed, and a new trial ordered.

VAN HOESEN and LARREMORE, JJ., concurred.

Judgment reversed and new trial ordered.