## THE UNION NATIONAL BANK OF RAHWAY, NEW JERSEY, RESPONDENT, *v.* HOWARD L. UNDERHILL, APPELLANT, IMPLEADED, &C.

*Giving of a firm note by one partner for his individual debt—when the person receiving it is chargeable with notice of his lack of authority so to do.*

The plaintiff, a bank, held a protested check drawn by one Cheyney and indorsed for his accommodation by one Vail. The bank, knowing that Vail was an accommodation indorser, having pressed him and Cheyney for payment, the latter was induced to give his firm note to Vail, who indorsed it, and with it took up the protested check from the bank, paying to it a small balance due on the latter in cash.

Underhill, Cheyney's partner, knew nothing of the giving of the firm note, and never assented thereto.

In an action upon the note, *held*, that the transaction itself was notice to the bank, and put it upon inquiry as to whether Underhill had assented to the

giving of the firm note; and that, as he had not assented to it, he was not liable thereon.

APPEAL by the defendant Underhill, from a judgment entered against him, upon a verdict directed by the court in favor of the plaintiff, and from an order denying a motion for a new trial, made upon the minutes of the judge before whom the action was tried.

*Hamilton Odell*, for the appellant.    The authority of one partner to bind his copartners is strictly and without exception limited to transactions within the scope of, and pertaining to the business of the partnership. (*Welles* v. *March*, 30' N. Y., 344; *Cockroft* v. *Claflin*, 64 Barb., 464; *Elliot* v. *Dudley*, 19 Id., 330; *Pinckney* v. *Keyler*, 4 E. D. Smith, 471; *Sweetser* v. *French*, 2 Cush., 314; *Moran* v. *Prather*, 22 Wall., 492; *McQuewans* v. *Hamlin*, 35 Pa., 517; *Bankhead* v. *Halloway*, 6 Coldw., 56; *Goodman* v. *White*, 25 Miss., 163; *Hotchkiss* v. *Kent*, 8 Mich., 526; *Cayton* v. *Hardy*, 27 Mo., 526; *Selden* v. *Bank of Commerce*, 3 Minn., 166.)    The indorsement by one partner of his individual note in the firm name is notice to all that the indorsement is outside of the firm business, and unauthorized. (*Tanner* v. *Hall*, 1 Pa. St., 417.)    A creditor of one partner who accepts a partnership security, on account or in discharge of his claim, is chargeable with knowledge that such security is wrongfully issued. (*Elliott* v. *Dudley*, *sup.*; *Kemeys* v. *Richards*, 11 Barb., 312; *Haldeman* v. *Bank of Middletown*, 20 Pa., 440; *Baird* v. *Cochran*, 4 Serg. & R., 397; *Whitmore* v. *Adams*, 17 Iowa, 568; *Chazournes* v. *Edwards*, 3 Pick., 5; *Davenport* v. *Runlett*, 3 N. H., 336; *Arden* v. *Sharpe*, 2 Esp., 524; *Wills* v. *Masterman*, 2 Esp., 731; *Green* v. *Deakin*, 2 Stark., 347; *Wilson* v. *Williams*, 14 Wend., 146; *Geery* v. *Cockroft*, 1 J. & S., 146; *Bendelt* v. *Hettric*, 3 Id., 406.)    And in accepting it, is himself guilty of a fraud on the other partners. (*Rogers* v. *Batchelor*, 12 Pet., 230; *Tompkins* v. *Woodyard*, 5 W. Va., 216; *Mauldin* v. *Branch Bank*, 2 Ala., 502; *Cotton* v. *Evans*, 1 D. & Bat. Eq., 284; *Long* v. *Carter*, 3 Ired. Law, 241; *Mecutchen* v. *Kennady*, 27 N. J. L., 230; *Gansevoort* v. *Williams*, 14 Wend., 138; *Exp. Darlington Co.*, 4 De Gex, J. & S., 581; *Calkins* v. *Smith*, 48 N.

Y., 618; *Venable* v. *Levick*, 2 Head, 351; *Hickman* v. *Reineking*, 6 Blackf., 389.) No transferee of partnership paper who knows, or from any circumstances has reason to believe, that it was issued by one partner for his individual benefit, or in a transaction outside of the partnership business, is a *bona fide* holder of such paper. (*Smyth* v. *Strader*, 4 How. [U. S.], 404, 416; *King* v. *Faber*, 22 Pa., 21; *New York Fire Ins. Co.* v. *Bennett*, 5 Conn., 574; *Cotton* v. *Evans*, 1 D. & Bat. Eq., 284; *Fielden* v. *Lahens*, 3 Tr. App., 220; *Bank of Vergennes* v. *Cameron*, 7 Barb., 150; *Stall* v. *Catskill Bank*, 18 Wend., 478; *Fall River Bank* v. *Sturtevant*, 12 Cush., 375; *Laverty* v. *Burr*, 1 Wend., 529.) And he cannot enforce it against the other partners, without showing their authority or assent. (*Cases supra; Butler* v. *Stocking*, 8 N. Y., 410; *Williams* v. *Walbridge*, 3 Wend., 415; *Joyce* v. *Williams*, 14 Id., 145; *Rust* v. *Hauselt*, 9 J. & S., 467; *Lanier* v. *McCabe*, 2 Fla., 32; *Andrews* v. *Planters' Bank*, 7 Smedes & M., 192; *Zuel* v. *Bowen*, 78 Ill., 234; *Williams* v. *Gilchrist*, 11 N. H., 540; *Sweetser* v. *French*, 2 Cush., 314; *Scott* v. *Bandy*, 2 Head, 197; *Sedgwick* v. *Lewis*, 70 Pa., 217; *Burleigh* v. *Parton*, 21 Tex., 585; *Weed* v. *Richardson*, 2 D. & Bat. Law, 535; *Lang* v. *Waring*, 18 Ala., 157; *Hendrie* v. *Berkowitz*, 37 Cal., 113; *Robinson* v. *Aldridge*, 34 Miss., 352; *Austin* v. *Vandermark*, 4 Hill, 261; *Leverson* v. *Lane*, 13 C. B. [N. S.], 278.) One partner cannot render his copartners liable on a note given for his individual debt, by including in it a small indebtedness due from the firm. (*King* v. *Faber*, 22 Pa., 21; *Brooke* v. *Evans*, 5 Watts, 196; *Baxter* v. *Plunkett*, 4 Houst., 450.)

*Robert S. Green* and *A. E. Woodruff*, for the respondent. The case shows, that these notes were discounted for Mr. Vail, and that, with the proceeds of the discounted notes and his own check on another bank, he took up the protested check, on which he was liable as indorser. The bank held the protested paper of Cheyney with Vail as security, it had a present cause of action—it gave up the protested check, thereby surrendering its right of action against Vail and the evidence of indebtedness, and took therefor the notes in suit payable at two, three and four months. Under the decisions

in this State such a transaction constituted the plaintiff a holder for value. (*Stettheimer* v. *Meyer*, 33 Barb., 215 ; *Pratt* v. *Coman*, 37 N. Y., 440 ; *Youngs* v. *Lee*, 12 N. Y., 551 ; *Day* v. *Saunders*, 37 How. Pr., 534 ; S. C., 1 Tran. App., 353 ; *Brown* v. *Leavitt*, 31 N. Y., 113 ; *Clothier* v. *Adrience*, 51 N. Y., 326 ; *Chrylois* v. *Renois*, 43 N. Y., 209 ; *Cowing* v. *Altman*, 71 N. Y., 435.) Conceding that Cheyney made the note in the partnership name, and, without authority, used it for his individual purposes, it simply threw upon the holder the burden of proving that it was received *bona fide*, and for a valuable consideration. (*Bank of St. Albans* v. *Gilliland*, 23 Wend., 311 ; *Harger* v. *Worrall*, 69 N. Y., 373 ; *Catskill Bank* v. *Staff*, 18 Wend., 465.) Proof of the existence of facts and circumstances, even if calculated to excite suspicion, will not deprive a party of the right to be considered a *bona fide* holder of negotiable paper. (*Chapman* v. *Rose*, 56 N. Y., 139 ; *Welsh* v. *Sage*, 47 N. Y., 143 ; *Seybel* v. *Currency Bank*, 54 N. Y., 288 ; *Murray* v. *Lardner*, 2 Wall., 110.) The burden of proving that the notes were not given for partnership purposes was on the defendant. (*Livingston* v. *Roosevelt*, 4 Johns., 278 ; *Catskill Bk.* v. *Stall*, 18 Wend., 465 ; *Nat'l Union Bank of Watertown* v. *Landon*, 66 Barb., 189 ; affirmed in Court of Appeals, see mem., 40 How. Pr., 721.)

BARRETT, J. :

For some time prior to the transaction in litigation, the plaintiff bank, and Jesse S. Cheyney, had had dealings together, which finally resulted in an indebtedness to the former of some $5,000. For this, the bank held Cheyney's protested check, indorsed by one Vail. The latter was an accommodation indorser, of which the bank was aware. After holding the protested check for some time, the bank began pressing both Cheyney and Vail for a settlement. Thereupon, Vail went to Cheyney, and induced him to give his *firm* notes to take up the check. This firm was composed of Cheyney and the defendant Underhill. The firm name was Jesse S. Cheyney & Co. Underhill knew nothing of Cheyney's action in the matter, and never assented thereto. Vail took the firm notes (which were payable to his order and indorsed by him) to

the bank, and thereupon settled the protested check, he paying a small difference in cash. The court at Circuit directed a verdict for the plaintiff Underhill. This we think was error. The verdict should have been the other way. The bank may have been a holder for value, having taken the notes in payment and satisfaction of the check, but it was not a *bona fide* holder. This results from the fact that the precedent debt was Cheyney's individual obligation. It is well settled that where a note is given in the firm name by one partner for his private debt, or in a transaction unconnected with the partnership business, which is the same thing, and it is known to be so given by the person taking it, the other partners are not bound, unless they have assented. (*Gansevoort* v. *Williams*, 14 Wend., 138; *Joyce* v. *Williams*, Id., 145; *Wilson* v. *Williams*, Id., 157; *Livingston* v. *Hastie*, 2 Caines, 246; *Stall* v. *Catskill Bank*, 18 Wend., 477; *Elliott* v. *Dudley*, 19 Barb., 326. And see *Bank of Rochester* v. *Bowen*, 7 Wend., 159; *Dob* v. *Halsey*, 16 Johns., 34; *Bank of Vergennes* v. *Cameron*, 7 Barb., 151; *Fielden* v. *Lahens*, 6 Abb. Pr. N. S., 341.) Upon the face of the transaction, the bank was chargeable with notice. (*Same case.*) In *Green* v. *Deakin* (2 Starkie, 347), where a partnership bill was given by one member for his private debt, the court held that *the nature of the transaction was intrinsically notice.* "The notice which defeats the plaintiff," said BRONSON, J., in *Wilson* v. *Williams* (*supra*), "is notice that the indorsements were not made on account of a partnership transaction." In *Elliott* v. *Dudley*, *supra*, the court, WELLES, J., said: "It is impossible for one partner, by his acts or admissions, to bind his copartners without their assent, express or implied, for an individual debt of his own. The plaintiff does not occupy the position of a *bona fide* indorsee, because the case shows that the note was taken by his clerk and agent for a debt previously existing and owing by De Witt (one of the partners) to the plaintiff." (See also *Arden* v. *Sharpe*, 2 Esp., 524; *Wells* v. *Masterman*, Id., 731; *Whitmore* v. *Adams*, 17 Iowa, 567.)

There can be no doubt about this where the firm note is actually handed to the creditor by the partner, who is his individual debtor. It is urged, however, that the present case is not within these rules, because the final settlement was with Vail, not

Cheyney. Indeed, the president of the bank talks of having discounted the firm paper for Vail, quite as though it were an independent and ordinary business transaction. This gentleman must have reconciled his testimony with his conscience, by theorizing as to the legal effect of the facts. He knew very well that Cheyney was the principal debtor, and that Vail was merely his surety. Vail kept no account with the bank. He brought the notes for the express purpose of taking up Cheyney's protested check. The president knew that the firm signatures were in Cheyney's handwriting. Finding that the notes were not quite sufficient in amount, Vail gave the bank his own check for the difference, and closed the matter. To talk of this as a discount of the notes in the regular course of business, is worse than absurd. It verges upon untruthfulness. There was a simple substitution of Jesse S. Cheyney & Co.'s notes, indorsed by Vail, for Jesse S. Cheyney's check similarly indorsed. Whether the notes were received by the bank directly from the hands of Cheyney or Vail, was entirely immaterial. In either case, *the transaction itself was notice.* The possible idea, attributed to the bank, that Vail might himself have acquired the firm notes in some independent business transaction, and parted with them in the manner and for the purpose indicated, is far-fetched. The bank believed in no such coincidence. The truth was plainly before it, namely, that Vail had procured these notes to take up the check, and it was clearly put upon inquiry as to Underhill's consent.

It is also urged that some of the money procured on Cheyney's individual checks was used in the firm's business. This was not established. Mr. Cheyney said that " some *small amounts may have been,*" but the main body of the indebtedness was previous to the existence of the firm. Again, he said that " the indebtedness was due for bills ordered by myself previous to the existence of the firm, and *possibly,* as I cannot say positively, to the contrary, for some debts incurred after January 15, 1877," the date of the formation of the firm. But even if a small firm indebtedness has been included, that would not render Underhill liable for Cheyney's large individual debt. (See *King* v. *Faber*, 22 Pa., 21.)

The judgment and order denying a motion for a new trial should

therefore be reversed, and a new trial ordered, with costs to abide the event.

Such new trial should not take place upon the short calendar day. The cause is too important to be tried at the special circuit.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, with costs to abide event.