THE BANK OF VERGENNES *vs.* CAMERON and others.

To fix the liability of an indorser of an accepted bill, it is necessary that the holder should, at the proper time, present it to the acceptor, or at the place of payment, and demand its payment.

Presentment and demand, as well as due notice of non-payment, are conditions precedent to the liability of the drawer and indorser.

The acceptor has a right to see the bill, before he determines whether he will pay it or not. And if he pays it, he has a right to have it delivered to him, as a voucher in his settlement with the drawer.

The fact of presentment need not appear in the protest, *in verbo*, but the statement in the protest must, *ex vi termini*, import that when the notary made the demand of payment, he had the draft with him, ready to be delivered up, in case of payment.

Where a notary states in his certificate of protest, that he went with the draft to the bank at which it was payable, and demanded payment, this will be deemed

equivalent to saying that when he made the demand he had the draft with him, and was prepared, in case of payment, to surrender it to the person who should honor the draft on behalf of the acceptor; and the evidence furnished by such certificate is sufficient.

A memorandum at the foot of a draft, made by a notary and signed with his initials, stating the protest, and the mailing of notices directed to the drawer and indorsers, constitutes no part of the official certificate of the notary, and is not legal evidence of the service of notices of non-payment, upon the drawer and indorsers.

Nor is the fact that an indorser, shortly after the draft becomes due, exhibits a notice of protest which he has just taken from the post office, evidence of due notice to the indorsers.

The admission, by one of two partners who have indorsed a draft in the name of the firm, that the draft had been duly protested, will not, if made after the dissolution of the partnership, be allowed to have the effect of proving notice, as against the other indorser.

In an action against an indorser of a bill of exchange, he may prove that the bill was discounted for the acceptor, and that the name of the indorser's firm was put upon the same by his copartner, as an accommodation indorsement, without the knowledge or consent of the defendant.

The fact that the drawer has the draft in his hands, with the indorsement of a firm upon it, is sufficient to charge the person discounting the same with notice that it is a mere accommodation indorsement.

If a person discounting a draft is apprised by the circumstances under which the same is presented to him that the name of a copartnership firm indorsed upon it, had not been indorsed in the usual course of business, this is sufficient to impose upon him the necessity of ascertaining, before he receives it, whether the firm name has been put upon it by proper authority. And if he omits to make such inquiry, he takes the draft at the risk of establishing such authority.

If a draft, discounted under such circumstances, is subsequently transferred, in the ordinary course of business, to a bona fide holder for a valuable consideration, without notice, who sues thereon, the defence that it was indorsed in the copartnership name without the consent of the defendant, can not be sustained.

But upon showing, in such an action, that the indorsement was made for the accommodation of the drawer or acceptor, and without the authority of the defendant, and that the person discounting the same was chargeable with notice of those facts, the burden will be thrown upon the plaintiff, to show that he received the draft under circumstances which would shut out the defense.

MOTION for a new trial. This was an action of assumpsit, tried at the Rensselaer circuit, in November, 1846, before PARKER, circuit judge. The plaintiffs gave in evidence a draft for $1000, dated Troy, July 2, 1845, drawn by Peter Comstock, upon Allen Comstock, Burlington, Vt., payable twenty-five days

after date to the order of Baker & Cameron, by whom it was indorsed. The draft was accepted payable at the Bank of Burlington. Cameron alone defended the suit. It was proved, upon the trial, that at the time the draft was made, Baker and Cameron were partners in the grocery business in the city of Troy, and that the indorsement of their partnership name upon the draft was made by Baker. The draft was discounted by Moses W. Scott. He testified that he discounted it for the *drawer*, from whom he received it, and that before it became due he transferred it to his brother. To prove the protest of the draft for non-payment, the plaintiff offered in evidence a certificate of a notary, residing at Burlington, annexed to the draft, in which he stated that on the 30th day of July, 1845, he " went with the annexed draft of Peter Comstock on Allen Comstock, for $1000, to said bank and demanded payment thereof which was refused." At the foot of the draft was a memorandum in the following words : " Protested July 30, 1845, and mailed notice for drawer, directed to Port Kent, for first indorser to Troy, New-York, and for last indorser to Vergennes, Vt., W. F. G., N. P." Scott further testified that Cameron showed him the notice of protest the day he took it out of the post office, which was within three days after the draft fell due. He also testified that he saw a notice of the dissolution of the partnership of Baker & Cameron published in the forepart of August, 1845. The counsel for the defendant objected to the admission of the certificate of the notary as evidence to prove the presentation and protesting of the draft and notice of its non-payment to the indorsers. The court overruled the objection and allowed the draft and certificate to be read ; to which decision the counsel for the defendant excepted. It was also proved that the other defendant signed a cognovit, to be used only in case all the parties should sign it.

The plaintiffs having rested, the counsel for the defendant Cameron moved for a nonsuit, on the ground that there was no evidence of the presentation of the draft for payment, at the Bank of Burlington, or of notice of protest to the defendant Cameron. The court denied the motion, and the defendant's counsel excepted. The defendants' counsel then offered to

prove that the draft was discounted for Comstock, *the acceptor*, and that the name of the firm of Baker & Cameron was put upon it by Baker, one of the partners, as an accommodation indorsement, without the knowledge or assent of the defendant Cameron; but the court overruled and excluded the evidence, and the defendant's counsel excepted. The jury thereupon, under the charge of the court, rendered a verdict for the plaintiff for the amount of the draft with interest.

*J. Pierson*, for the plaintiff.

*D. L. Seymour*, for the defendant Cameron.

*By the Court*, HARRIS, J. To fix the liability of an indorser of an accepted bill, it is necessary that the holder should, at the proper time, present it to the acceptor, or at the place of payment, and demand its payment. Presentment and demand, as well as due notice of non-payment, are conditions precedent to the liability of the drawer and indorser. The acceptor has a right to see the bill before he determines whether he will pay it or not; and if he pays it, he has a right to have it delivered to him as a voucher in his settlement with the drawer. (*Chitty on Bills*, 7th Am. ed. 216. *Story on Bills*, § 325. *Fall River Union Bank* v. *Willard*, 5 Metcf. 216. *Musson* v. *Lake*, 4 *Howard's U. S. Rep.* 262.) The usual form of the notarial certificate is that the notary, "did exhibit the bill" to the acceptor and demand payment, &c. (*See Story on Bills*, § 302, *note* 2.) In this case the notary certifies that he went with the draft to the bank, and demanded payment. Do these terms fairly import that the notary, at the time of demanding payment, presented the draft? If they do, I think the certificate sufficient in this respect. If not, the plaintiffs have failed to furnish legal evidence of the performance of one of the conditions upon which the defendant's liability depended. *Musson* v. *Lake*, above cited, is a strong case in favor of the position of the defendant's counsel that the protest does not furnish sufficient evidence of actual presentment. "The protest," says Justice McKinley, who delivered the opinion of a majority of

---

The Bank of Vergennes v. Cameron.

---

the court, "should set forth the presentment of the bill, the demand of payment, and the answer of the acceptor. The law makes the notary the agent of the holder for the purpose of presenting the bill, and doing whatever the holder is bound to do, to fix the liability of the indorser. Every thing, therefore, that he does in the performance of this duty, must appear distinctly in his protest. If it fails to make full proof of due diligence on the part of the plaintiff it must be rejected." In that case the notary certified that at the request of the Union Bank, holder of the original draft, of which a true copy was on the reverse of the protest, he *demanded payment of said draft* at the counting house of the acceptors, and was answered by Mr. Kirkman, one of the firm, that the same could not be paid. There was nothing in the bill which furnished evidence that the notary even had the draft with him when he demanded payment. It was therefore held, that the protest ought not to have been received as evidence of presentment. But even in that case, Mr. Justice McLean thought that as the notary could not make a legal demand in the absence of the bill, the fair if not the necessary inference was, that *he had possession* of the bill when he demanded payment. And Mr. Justice Woodbury thought the protest was competent evidence to be submitted to the jury, in order that they might infer from it that the draft was presented when the demand was made. I think the extent of the doctrine established by the authorities upon this subject is, not that the fact of presentment must necessarily appear in the protest, *in verbo*, but that the statement in the protest must, *ex vi termini*, import, that when he made the demand of payment, the notary had the draft with him, ready to be delivered up, in case of payment.

In this case, the notary states that he went with the draft to the bank, and demanded payment. The language, I think, may fairly be deemed equivalent to saying that when he made the demand he had the draft with him and was prepared, in case of payment, to surrender it to the person who should honor the draft on behalf of the acceptor. So far, therefore, as it relates to the presentment of the draft, and the demand of pay-

ment, I am inclined to hold that the evidence furnished by the notarial certificate is sufficient.

But in respect to notice of non-payment, the proof was clearly insufficient; or rather, there was no legal evidence at all. Notice to the drawer or indorser is, by the law merchant, no part of the official duty of the notary. His certificate of such notice is, therefore, not legal evidence of the fact, except when so declared by statute. In this state we have such a statute, declaring that in all actions at law, the certificate of a notary, under his hand and seal of office, stating the service of notice, &c. shall be presumptive evidence of the facts contained in such certificate. (*Sess. Laws*, 1833, *p.* 395, § 8.) It was held in *The Bank of Rochester* v. *Gray*, (2 *Hill*, 227,) that this statute is only applicable to notaries of this state. The position is assumed by Mr. Justice Cowen, without argument or authority. "It is scarcely necessary to observe," says he, at the conclusion of his discussion of the other questions in the case, "that our statute relative to proof of notice by certificate, applies to none others than notaries of this state." This may be so, but I confess I am unable to see by what rule of construction this conclusion is rendered so obvious. On the contrary, it seems to me that the legislature intended to make the statute applicable to all notarial certificates. I find nothing in the language, or object of the act, which requires or justifies the restriction of its operation to the certificates of notaries of this state. But it is unnecessary, in this case, either to affirm or overrule that decision. The certificate in this case makes no mention of the service of notice of protest. The only allusion to such notice is in the memorandum at the foot of the draft, and it is not pretended that this memorandum was made evidence. It constitutes no part of the official certificate of the notary.

Nor do I think the fact that Cameron, within three days after the draft became due, exhibited to the witness Scott a notice of protest which he had that day taken from the post office, can be regarded as evidence of due notice to the indorsers. Notice of non-payment was a condition precedent to the plaintiff's right to recover. To be effectual, such notice must have been given

The Bank of Vergennes *v.* Cameron.

at a particular time and in a particular manner. The indorser has a right to insist upon strict proof of due notice. In *Smedes* v. *The Utica Bank*, (20 *John.* 372,) the indorser of the note in question was J. C. Spencer, who resided in the same village where the note was payable. It was proved by an agent of the notary, by whom the note was protested, that in the evening of the same day he either put a notice of protest for Mr. Spencer into the post office or delivered it at his office ; that he had no recollection of ever having left at the post office a notice for a resident of the village, and he believed the notice was left at Mr. Spencer's office. A clerk in Mr. Spencer's office saw the notice in his office the day the note was protested. It was held that, though there was a strong presumption that the notice was left at the indorser's office, the fact was left in doubt ; that nothing short of clear proof of legal notice would subject the indorser to liability, and therefore the proof was insufficient. " The question is not," say the court, " what inference the jury might draw, but it is, what testimony does the law require." So, in this case, there may be little reason to doubt that due notice was given, but the plaintiffs have failed to give clear and explicit evidence that such was the fact, and the liability of the defendant as indorser is not to depend upon any mere inference or presumption.

The admission of Baker, in March, 1846, that the draft had been duly protested, though it may have been proper, when the evidence was offered, to receive it, can not be allowed to have the effect of proving notice, as against Cameron ; for it was subsequently proved that the partnership between Baker and Cameron had been dissolved before such admission was made. Nor can Cameron be affected by what was said by Baker to the witness Scott. It is true that Baker told Scott the draft should be paid ; that he would see Comstock and do all in his power to have it paid, yet, conceding that it amounts to a direct promise by Baker, on behalf of the firm, to pay the draft, which is certainly more than the terms used necessarily import, it does not appear in which of the two interviews between the parties

the promise was made, or whether it was before or after the dissolution of the partnership between Baker and Cameron.

I think, therefore, the motion for a nonsuit should have been granted, upon the ground that there was no sufficient evidence of notice of the protest of the draft, or of any waiver of the defendant's right to insist upon strict proof of such notice. For this reason a new trial must be granted. But as it is probable that, upon another trial, this defect in the proof may be supplied, it may be useful to consider the remaining question presented by the bill of exceptions.

The defendant offered to prove that the draft was discounted for the acceptor, and that the name of the firm of Baker & Cameron was put upon the draft by Baker, one of the partners, as an accommodation indorsement, without the knowledge or assent of the defendant Cameron. I think this evidence should have been received. Scott received the draft from Peter Comstock the drawer. Whether it was discounted for him, or for the acceptor, is quite immaterial. The fact that the drawer had the draft in his hands, with the indorsement of Baker & Cameron upon it, is sufficient to charge Scott, who discounted the draft, with notice that it was a mere accommodation indorsement. He was apprised by the circumstances under which the draft was presented to him, that the name of the defendants' firm had not been indorsed upon it in the usual course of business. This was sufficient to impose upon him the necessity of ascertaining, before he received it, whether the firm name of Baker & Cameron had been put upon it by proper authority. Having omitted to make such inquiry, he took the draft at the risk of establishing such authority. He could not protect himself upon the ground that he received the paper in ignorance of the want of Baker's authority to use the name of his partnership in making the indorsement. The rule is just and practical, and is firmly settled by authority. (*Stall* v. *Catskill Bank*, 18 *Wend.* 477, *and cases there cited.*) Assuming, then, that Cameron did not assent to the use of his name as an indorser of the draft, Scott must be regarded as having received it, knowing that such assent had not been given. Had he retained the

The Bank of Vergennes *v.* Cameron.

draft, therefore, he clearly could not have enforced it against Cameron as a bona fide holder. But holding the draft as an indorsee, though himself chargeable with notice of the circumstances under which the indorsement was made, if he had transferred it, in the ordinary course of business, to a bona fide holder, for a valuable consideration, without notice of the facts which would deprive him of the right of protection as a bona fide holder of the indorsement, the legal presumption being that he had received it from the indorsers in the transaction of their business, the defense here interposed could not be sustained. Then Cameron, as against such bona fide holder, would be bound by the indorsement of the firm name by his partner, though made against his will or without his knowledge. But the difficulty in the plaintiffs' case is, that they have not shown a better right to hold the indorsement against Cameron than Scott himself had. Scott says he transferred the draft to his brother before it became due, but under what circumstances does not appear; nor does it appear how the plaintiffs became the holders of the draft. There is nothing in the facts proved inconsistent with the supposition that Scott made the transfer to his brother merely for the purpose of collection, and that the plaintiffs received it for the same purpose. Upon showing that the indorsement was made for the accommodation of the drawee or acceptor, and without the authority of Cameron, and that Scott was chargeable with notice of these facts, the burden would have been thrown upon the plaintiffs to show that they received the draft under circumstances which would shut out the defense. (*Stall* v. *Catskill Bank, above cited. Munro* v. *Cooper,* 5 *Pick.* 412. *Bank of St. Albans* v. *Gilliland,* 23 *Wend.* 311. *Joyce* v. *Williams,* 14 *Id.* 141.) I am of opinion, therefore, that the evidence offered by the defendant at the circuit should have been received, and that for this reason also a new trial should be granted.

New trial granted.