## FIELDEN *v.* LAHENS.

September, 1867.

Modifying 9 *Bosw.* 436.

Inasmuch as it is no part of the business of a mercantile firm to make or indorse notes, as a firm, for third persons, there is no implied authority for one member to indorse or affix the name of the firm to negotiable paper, in which the partnership have no interest; and one who takes such paper, so indorsed, with notice that the indorsement was made for the accommodation of the one partner who made it, cannot hold the other partners liable upon it.

A finding of a referee of the fact of notice that certain indorsements were accommodation indorsements, if based on the possession of the notes by the maker, and his delivery of them with such indorsements for his own benefit, may be regarded as a conclusion of law, and is therefore open to examination in the court of appeals.[*]

* Compare Farnham *v.* Hotchkiss, p. 93 of this vol.

Fielden v. Lahens.

The fact that the maker of a note holds and puts it into circulation for his own advantage, is notice to the party taking it that whatever indorsements may be upon it were made for his benefit, and not in the course of business.

In an action against partners a separate judgment may be entered against those who are found liable, while the plaintiff is nonsuited as to those who are not liable.

In an action at law, after the plaintiffs have closed their case, it is discretionary with the referees whether to allow them to open it and introduce evidence, not rebutting, but competent and proper, in the first instance, to make out their case; and their decision on this point is not subject to review on appeal.

An objection to the competency of a witness whose deposition is offered in evidence, is to be determined by the law as it stands at the time of the trial, not by the law as it was when the deposition was taken.

Thomas Fielden and others sued Pierre François Lahens and others in the superior court of the city of New York, on October 21, 1844. The complaint was against 'the defendants, as alleged indorsers of three promissory notes, all dated May 25, 1844, two of them payable at ninety days, and one at sixty days from date; one for fourteen thousand dollars, one for thirteen thousand five hundred dollars, and the third for twenty-one thousand two hundred and twenty-one dollars and forty-three cents, making in all forty-eight thousand seven hundred and twenty-one dollars and forty-three cents. They were in the common form, signed by Alexander Caselli, as maker, and indorsed with the name of J. Lahens, &c.

The defendant, Louis Emile Lahens, appeared by one attorney, and the defendants, Pierre François Lahens and Edward Ernest Lahens, by another, and put in separate pleas of the general issue, and the cause was referred to three referees, who, upon the trial, which commenced February 4, 1858, nonsuited the plaintiffs.

After the plaintiffs had closed their testimony, and testimony on behalf of the defendants had been given, and a motion for nonsuit had been made, and granted by the referees, plaintiffs' counsel proposed to examine one of the defendants, stating that plaintiffs subpœnaed him to produce the articles of partnership. Being required to state what they intended to prove, counsel replied: " We intend to prove what was the authority

conferred on Louis E. Lahens by his copartners, we ourselves not knowing what that authority was." The referees decided that the statement was insufficient, and excluded the evidence.

In the course of the trial a deposition of one Caselli, who was pecuniarily interested in the action, and which had been taken on commission in 1845, was produced and read, against the objection of the plaintiffs, who insisted that the witness being incompetent from interest at the time he was examined, his deposition could not now be read.

The referees found, *First.* That at the time of the making of and indorsing of the promissory notes in the declaration in this action set forth, Joshua Fielden, John Fielden, James Fielden, Thomas Fielden, Daniel Campbell and William C. Pickersgill were copartners in trade under the respective firms of Fielden Brothers & Co., at the city of Liverpool, in England, and of W. C. Pickersgill & Co., at the city of New York ; that the said Joshua Fielden, John Fielden and James Fielden have since departed this life, and that the said Thomas Fielden, Daniel Campbell and W. C. Pickersgill have survived them ; also, that at the time of the making and indorsing of the said promissory notes, Pierre François Lahens, Edward Ernest Lahens, Edward Gaudard and Louis Emile Lahens were copartners in mercantile business at Havre, in France, and at the city of New York, respectively, under the firm of J. Lahens & Co. ; that the said Louis Emile Lahens was the only one of said copartners then residing in the city of New York, or in the United States ; that the said Edward Gaudard has since departed this life, and that the defendants in this action have survived him.

*Second.* That the indorsements of the name of J. Lahens & Co. upon the said promissory notes were made and executed in the city of New York by the defendant, Louis Emile Lahens, one of the members of said firm, and delivered by him to Alexander Caselli, the maker of the said notes, in said city, for the accomodation of said Alexander Caselli, and that no consideration was received by the said J. Lahens & Co. for the same.

*Third.* That the notes so indorsed were delivered by the said Alexander Caselli, the maker thereof, to the said firm of W. C. Pickersgill & Co., at the said city of New York.

*Fourth.* That the said W. C. Pickersgill & Co., by the fact of such possession and delivery of the said notes to them by the maker thereof, after the same had been so indorsed with the name of said J. Lahens & Co., had notice that the said J. Lahens & Co. had received no value therefor, and that the said indorsements were made for the benefit and accommodation of the maker of the said notes.

*Fifth.* That the plaintiffs had failed to prove the joint liability of the defendants. They further reported that, upon the said facts so found, as a conclusion of law, the plaintiffs, having so failed to prove a joint liability of all the defendants, cannot recover in this action against the said defendants, or against any or either of them.

And we do therefore decide and determine that all the defendants are entitled to judgment against the plaintiffs, and for their costs.

The judgment entered upon the report of the referees was affirmed by the superior court at general term. 9 *Bosw.* 436. Plaintiffs appealed.

*Jeremiah Larocque,* for plaintiffs, appellants;—Cited *Code,* §§ 136, subd. 3; 169; 274; 459, subd. 2; Brumskill *v.* James, 11 *N. Y.* (1 *Kern.*) 294; Marquat *v.* Marquat, 12 *Id.* (2 *Kern.*) 336; Pruyn *v.* Black, 21 *Id.* 30; McIntosh *v.* Ensign, 28 *Id.* 169; Claflin *v.* Butterfly, 5 *Duer,* 327; McKenzie *v.* Farrell, 4 *Bosw.* 192; Marine Bank *v.* Clements, 31 *N. Y.* 44; Goodman *v.* Simmons, 20 *How. U. S.* 343; Boyd *v.* Cummings, 17 *N. Y.* 101.

*Charles O' Conor,* for the respondents, P. F. and E. E. Lahens, —as to the merits;—Cited and commented on Farmers' Bank of Kent *v.* Butchers' & Drovers' Bank, 16 *N. Y.* 135; New York Fire Ins. Co. *v.* Bennett, 5 *Conn.* 580; Bank of Rochester *v.* Bowen, 7 *Wend.* 159; Foot *v.* Sabin, 19 *Johns.* 156; Laverty *v.* Burr, 1 *Wend.* 529; Boyd *v.* Plumb, 7 *Id.* 310; Stall *v.* Catskill Bank, 18 *Id.* 478; Bank of Vergennes *v.* Cameron, 7 *Barb.* 143; Bank of Genesee *v.* Patchin Bank, 13 *N. Y.* (3 *Kern.*) 316, 321; S. C. 19 *Id.* 314, 319; Vallett *v.* Parker, 6 *Wend.* 622. As to the discretionary power of referees in the

admission of evidence ;—Adams *v.* Bankart, 1 *Crompt. M. & R.* 681, 682; Thomas *v.* Fleury, 26 *N. Y.* 31; Ford *v.* Niles, 1 *Hill,* 300; Leland *v.* Bennett, 5 *Id.* 288, 289; Vallett *v.* Parker, 6 *Wend.* 622; Smith *v.* Paton, 31 *N. Y.* 66; Davis *v.* McCready, 17 *Id.* 235; Mead *v.* Bunn, 32 *Id.* 279; Woodruff *v.* McGrath, *Id.* 260; Williams *v.* Hayes, 20 *Id.* 60; Alexander *v.* Byron, 2 *Johns.* 319; Middleton *v.* Barned, 18 *Law J. Exch. N. S.* 435; 4 *Welsby & H. Exch.* 243; Kolle *v.* People, 9 *Abb. Pr. R.* 16.

*Coudert Brothers,* for the respondent, Louis E. Lahens,— cited Ackley *v.* Tarbox, 31 *N. Y.* 565.

J. M. PARKER, J. [After stating the facts.]—The questions considered and decided by the referees, as their report shows, were : first, whether the firm of J. Lahens & Co. were liable upon the indorsements; and second, whether, if it was not, a separate judgment could be rendered in the action against Louis Emile Lahens, who made the indorsement.

The facts found, bearing upon the first question, are that the firm of J. Lahens & Co. was a mercantile firm; that Louis Emile Lahens, one of the copartners, made the indorsements in the name of the firm, for the accommodation of the maker, without consideration to the firm; that the plaintiffs received the notes, so indorsed, from the hands of the maker, and that by the fact of their so receiving them, they had knowledge that the firm of J. Lahens & Co. had received no value therefor, and that the indorsements were made for the maker's accommodation.

These facts undoubtedly warrant the conclusion of law that the firm was not liable upon the indorsement.

The principle of the cases is, that inasmuch as it is no part of the business of a mercantile firm to make or indorse notes, as a firm, for third persons, there is no implied authority for one member to indorse or affix the name of the firm to negotiable paper, in which the partnership has no interest, for such purpose, and that the holder of such paper, so indorsed, who takes it with notice that the indorsement was made for the accommodation of the maker, cannot hold the firm liable upon it. Stall *v.* Catskill Bank, 18 *Wend.* 466, 477, 478; Bank of Rochester

*v.* Bowen, 7 *Id.* 158 ; Joyce *v.* Williams, 14 *Id.* 141 ; Gansevoort *v.* Williams, *Id.* 133 ; Austin *v.* Vandermark, 4 *Hill*, 259.

The finding that the plaintiffs had notice of the fact that the indorsements were mere accommodation indorsements, it is insisted by the plaintiff's counsel, is but a conclusion of law, and not a finding of fact, and is, therefore, open to examination. Inasmuch as the fact of notice is based upon the facts of the possession of the notes by the maker, and his delivery of them, bearing the indorsement of J. Lahens & Co., to the plaintiffs, thereby using them for his own benefit, the question of the legal sufficiency of such facts to constitute notice to the plaintiffs is undoubtedly involved in the finding. Treating it, therefore, as a conclusion of law, from the facts distinctly found and necessarily inferred, I think the referees right in their conclusions.

It was said by the chancellor, in Stall *v.* Catskill Bank (18 *Wend.* 466, 478), " If the drawer of a note carries it to a bank to get it discounted on his own account, or transfers it to a third person, with the name of a firm indorsed thereon, the transaction on its face shows that it is a mere accommodation indorsement, or the note would not be in the hands of the drawer; and the bank, or person who receives it from the drawer, being thus chargeable with notice that the firm are mere sureties of the drawer, and that it has not passed through their hands in the ordinary course of partnership business, the members of the firm who have been made sureties without their consent are not liable to such holder of the note."

This statement of the rule is, I think, substantially correct. The note being held by the maker, and put into circulation by him, in his own business, and for his own advantage, is evidence to the party taking it that whatever indorsements may be upon it were made for the maker's benefit, and not in the ordinary course of business; for, in the ordinary course of business, it would have passed from the maker to the payer and indorser. The party receiving it, therefore, from the maker, in payment of the maker's debts, assumes the risk of being able to show that the indorsement was in the usual course of business, and that the partners all consented to the act of the one who made the indorsement. As between the firm and the holder of the paper, this is but a reasonable rule. The partners are liable to

a *bona fide* holder *without notice* in such case, only because he has the right to presume that the indorsement was made in the usual course of the partnership business, and, therefore, within the scope of the authority of the individual member of the firm who made it. But when the circumstances are such as to inform the holder of the fact that the indorsement was not made in the course of the partnership business, such presumption is excluded; and it would be inequitable as well as illegal, as between the firm and the holder, for the court to presume the assent of the firm in favor of the holder thus notified. Austin *v.* Vandermark, 4 *Hill*, 259, 262; Bank of Vergennes *v.* Cameron, 7 *Barb.* 143.

The finding that the plaintiffs had notice that the indorsements were for Casseli's accommodation, being warranted, it follows that no judgment could be rendered upon them against the members of the firm, other than Louis Emile Lahens.

The next question is, could a several judgment be given against Louis Emile Lahens ?

It was well settled at common law that in an action against several defendants, on an alleged joint contract, no recovery could be had against any of them, unless a joint contract made by all of them was established (Mitchell *v.* Ostrom, 2 *Hill*, 520).

The Code has changed this rule in respect to actions commenced since it took effect. Section 136 of the Code has this provision: "If all the defendants have been served, judgment may be taken against any or either of them severally, when the plaintiff would be entitled to judgment against such defendant or defendants if the action had been against them or any of them alone." Section 274 has this: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants."

Section 8 restricts the application of that portion of the Code relating to civil actions to such as are commenced after July 1, 1848, except where otherwise provided.

By enactments in 1848 and 1849 certain sections of the Code were applied to suits commenced before it took effect, but sections 136 and 274 are not among the number so applied. In 1851 section 459 of the Code was amended so as to read as

follows: "The provisions of this act apply to *future proceedings* in actions or suits heretofore commenced and now pending, as follows: 1. If there has been no pleading therein, to the pleadings and all subsequent proceedings; 2. When there is. *an issue* of law or *of fact,* or any other question of fact to be tried, *to the trial and all subsequent proceedings."*

This section the learned court below held did not extend the provisions of sections 136 and 274 to suits pending when the Code went into operation. I confess I am differently impressed as to the effect of that section. It seems to me that it is within the scope and intent of its provisions to allow judgment to be taken against any or either of the defendants severally, when the plaintiffs would be entitled to judgment against such deftndant or defendants, if the action had been against them or any of them, as section 136 provides.

The proceeding for which the appellants contended,—the entry of a several judgment against Louis Emile Lahens,—is a proceeding in the action such as section 136 provides for, and the language of section 459 is clearly broad enough to apply section 136 to this case. Section 459, in effect, says that the trial and all subsequent proceedings, in actions brought before the Code took effect, in which an issue had been joined and not tried, are to be conducted in all respects as though the actions had been brought after the Code took effect.

Upon the trial of the case at bar came up the question, what was to be the course of proceedings? But one of the defendants being shown to be liable upon the indorsements, and two of the defendants not liable, under the Code, confessedly the thing to be done upon the trial, in such case, is to dismiss the complaint as to the two, and to render judgment against the one. Any other course in respect to the present case is a failure to apply the provision of the Code to the proceedings in the case, as section 459 requires.*

The injustice of an enactment which, in effect, deprives a defendant of a perfect defense to the action, and changes his right to recover costs into an obligation to pay them, is urged, as showing that the legislature could not have intended to ap-

---

* See McIntosh *v.* Ensign, 28 *N. Y.* 169.

ply the new rule in question to pre-existing suits. The defense insisted upon is a mere technical one, not founded on the merits, and the advantage which the defendant had under the old rule, a more adventitious one dependent upon a then existing rule of practice or proceeding,—a mere *formal* proceeding,—a *mode* of arriving at a result,—the judgment to which the plaintiffs have shown themselves entitled,—such advantages are not usually deemed entitled to protection, upon a legislative change of modes of proceedure.

Thus, prior to the Code, a variance upon the trial between the allegation in a pleading and the proof might be fatal to the plaintiffs' case, which, under section 169 of the Code, would be disregarded. If the plaintiff, in an action commenced prior to the Code, had made an actual averment in his declaration, *that* gave the defendant an advantage which would have operated as a defense, and entitled him to costs; and yet the legislature, by the act of April 11, 1849, ch. 438, expressly apply section 169 of the Code to actions pending when the Code took effect; by which section, such inaccuracy, which, as it stood, effectually shielded the defendant from a recovery against him, might be deemed immaterial and wholly disregarded..

Again, in an action before the Code, a party defendant could not be required to give evidence in favor of his adversary, and so stood secure against a judgment when he and the plaintiff were the only depositaries of the facts on which the cause of action depended. This was a technical advantage of which the legislature did not hesitate to deprive him by the same act of 1849, when it provided that section 390 of the Code, which allows a party to an action to be examined as a witness at the instance of the adverse party, should apply to the pre-existing suits.

It is difficult to see any more injustice done the defendant in the application of section 136 to pre-existing suits, than in the application to them of sections 169 and 309, and various other sections especially applied by the act of 1849, having a similar effect.

The advantages held by parties in those suits, depending not upon rights, but upon remedies, the legislature seems not to have been careful to protect, but, on the contrary, quite ready

to disregard, in providing for uniformity of proceedings in suits, the question whether they were commenced before or after the Code. So that it would not be safe, I think, to infer that there could have been no intent through section 459 to apply section 136 to pre-existing suits.

The exception to the exclusion of the defendants' articles of copartnership cannot be sustained. It cannot be pretended that, under the rules governing trials at law, the plaintiffs were, after having closed their case, entitled to open it and introduce evidence, not rebutting, but competent and proper in the first instance to make out their case. The referees had the right, in their discretion, to admit or exclude this evidence, and their decision is not subject to review upon appeal.

The referees decided correctly in admitting the deposition of Caselli. It was taken upon a commission in 1845, upon an examination in which the parties joined. So far as appears, the commission and return were regular, and there was no objection to the examination when taken. If the witness was then incompetent on the ground of interest, that might have been good cause of objection to the commission. No objection, however, so far as appears, was then made. But that he was interested was no ground of exclusion when the testimony was offered on the trial. He was then a competent witness, and his evidence was properly received.

The judgment of the court below is right as to the defendants Pierre François Lahens and Edward Ernest Lahens, and to that extent should be affirmed, with costs.

But as to Louis Emile Lahens, inasmuch as it appears that the plaintiffs were nonsuited as to him, not because they failed to show him liable, but because the other defendants were not jointly liable with him, the judgment is erroneous, and should be reversed, and a new trial granted, costs to abide the event.

A majority of the judges concurred.

Judgment affirmed, with costs, as to P. F. Lahens and E. E. Lahens, and reversed as to L. E. Lahens; and new trial ordered, costs to abide event.