By the Court.—Freedman, J.
It is conceded that at the trial the answering defendants fully established that Alexander Law, who was a member of both firms whose names appeared upon the note, indorsed the said note with defendants’ firm name wholly without authority, and not in the course of the business of the firm, but for his own individual benefit, and therefore in fraud of defendants’ rights.
The point is raised, however, that the defendants failed to show that the bank had notice of these facts at the time it discounted the note, and that without affirmative proof to this effect on their part, the verdict cannot be sustained.
All the exceptions taken by the plaintiff during the progress of the trial, except one to be hereafter noticed, and especially those relating to the charge of the court *100 and the refusals to charge, relate with .more or less force to this point.
The question, therefore, to be determined is, upon which party the burden of proof was with respect to this branch of the case ?
In an action against an individual indorser the law is well settled that, when he has shown that his indorsement was procured by fraud, the burden is then cast upon the plaintiff to establish that he is a bona fide holder for value, which means, that he had no notice of the fraud, and that he parted with value upon the faith of the note so indorsed. Proof merely that he parted with value is not sufficient. He must go further and show that he had no notice, and of this duty he cannot be relieved by suggesting that he should not be called upon to prove a negative.
It is claimed, however, that a different rule should have been adopted in this case, because the indorsement purported to be that of,a firm, and as such must be presumed to have been made in the course of the partnership business.
The rule that the act of one, when it has the appearance of being on behalf of the firm, is considered the act of the rest, rests upon the law merchant. It is, as was said by Nelson, J., in Gansevoort v. Williams (14 Wend. 133), no doubt against general principles. Nevertheless, it is a rule firmly established. All the members of a firm are liable for money lent to the firm upon application of one of the partners, and it is not necessary to show the actual application of the money to the use of the firm ; and, consequently, it was held that a note given by one of several partners in the name of the firm, for money ostensibly borrowed by such partner for such firm, is of itself presumptive evidence of the existence of a partnership debt; and if the other partners seek to avoid its payment, the burden of proof lies upon them to show that the note was *101 given in a matter not relating to the partnership business, and that with the knowledge of the payee (Whitaker v. Brown, 16 Wend. 505). This principle has been uniformly adhered to whenever the act of the individual partner, in making or indorsing a note in or with the firm name, gave the holder of the note a right to suppose that he was acting in the course of the business of the firm.
But where a note made or indorsed by one partner in or with the firm name is shown to have been received by the plaintiff, under circumstances which indicate in themselves that he is not acting in the course of the business of the firm, the rule is otherwise.
Thus, where a note is given in the name of a firm by one of the partners, for his private debt, and these facts are known to the person taking the note, the other partners are not bound except upon proof that they were previously consulted, and consented to the transaction ; and such consent, in this State at least, though the rule is otherwise in England, must be shown by the creditor who seeks to enforce the note against the firm (Dob v. Halsey, 16 Johns. 34, and cases there cited).
Upon the authority of this case it was held in Foot v. Sabin (19 Johns. 155) that the same principle applies with still greater force when one of several partners becomes surety on a note for another person, and, in doing so, attempts to bind his copartners ; because in such a case the creditor must be aware that the individual partner is pledging the partnership responsibility in a matter in nowise connected with the partnership business. To the same effect are Laverty v. Burr (1 Wend. 529); Bank of Rochester v. Bowen (7 Id. 159); Boyd v. Plum (Id. 309).
In Stall v. Catskill Bank (18 Wend. 467) the circumstances were not clear in themselves, and there was a conflict of testimony as to whether the cashier of the *102 bank in fact knew that the name of the firm had been signed to the note as a mere surety, and the case was submitted to the jury with the instruction, “ that if the plaintiffs had any knowledge that the note in question was indorsed by Teats, without the knowledge of Stall, for the benefit of another person, they could not recover; but that the plaintiffs, being the holders of the note as negotiable paper, were entitled to recover against the defendant Stall, if they received the note in, good faith, without knowledge that Stall had not assented to the indorsement, although it was indorsed by one of the partners in the name of the firm, without his knowledge or assent, and for the accommodation and benefit of the drawer.” This charge was, under the circumstances of the case, held to be unobjectionable, and the judgment was affirmed. In the course of his reasoning in the case last referred to, the chancellor said:
“If the drawer of a note carries it to a bank to get it discounted on his own account, or transfers it to a third person, with the name of a firm indorsed thereon, the transaction on its face shows that it is a mere accommodation indorsement, or the note would not be in the hands of the drawer ; and the bank, or person who receives it from the drawer, being thus chargeable with notice that the firm are mere sureties of the drawer, and that it has not passed through their hands in the ordinary course1 of partnership business, the members of the firm, who have been made sureties without their consent, are not liable to the holder of such note.”
This statement of the rule by the chancellor was approved by the court of appeals in Fielden v. Lahens (2 Abb. Ct. App. Dec. 111). In that case the indorsements of the name of J. Lahens & Co. upon the notes were made by one of the members of said firm for the accommodation of the maker and without consideration *103 to said firm, and the notes so indorsed were delivered to the maker, who delivered them to the plaintiffs. In affirming the .judgment in favor of the defendants, it was held:
“ The note being held by the maker, and put into circulation by him, in his own business, and for his own advantage, is evidence to the party taking it that whatever indorsements may be upon it were made for the maker’s benefit, and not in the ordinary course of business ; for, in the ordinary course of business it would have passed from the maker to the payee and indorser. The party receiving it, therefore, from the maker, in payment of the maker’s debts, assumes the risk of being able to show that the indorsement was in the usual course of business, and that the partners all consented to the act of the one who made the indorsement. As between the firm and the holder of the paper, this is but a reasonable rule. The partners are liable to a bona fide holder without notice in such case, only because he has the right to presume that the indorsement was made in the usual course of the partnership business, and therefore within the scope of the authority of the individual member of the firm who made it. But when the circumstances are such as to inform the holder of the fact that the indorsement was not made in the course of the partnership business, such presumption is excluded ; and it would be inequitable as well as illegal, as between the firm and the holder, for the court to presume the assent of the firm in favor of the holder thus notified.”
From the authorities referred to the following propositions may be deduced:
I. When a party takes negotiable paper, made, accepted, or indorsed by one of several partners, in or with the partnership name, and the fact that such name was not signed or indorsed in the regular course of the business of the firm is apparent on the face of *104 the instrument, or necessarily implied in the nature of the transaction, such party cannot, though he may have parted with value on the faith of the paper, charge the other members of the firm, except upon proof that they assented to the transaction. In every such case he is chargeable, as matter of law, with notice of the want of authority in the individual partner to bind the firm without their express assent.
II. When the fact, though existing, that such name was not signed or indorsed in the regular course of the business of the firm, is not apparent from the face of the instrument, and the nature of the transaction appears to be susceptible of different conclusions, the question of notice is one of fact, to be determined by the jury upon all the circumstances. In every such case the burden is again upon the plaintiff, though he may have parted with value, to satisfy the jury, either that the circumstances of the case did not constitute notice to him, or that, if they did, the other members of the firm assented to the transaction.
III. When the fact, though existing, that such name was not signed or indorsed in the regular course of the business of the firm, is not apparent from the face of the instrument, and the nature of the transaction appears to have been of such a character as to give the plaintiff a right to suppose that it was a partnership transaction, the members contesting their liability must not only show that in fact it did not constitute such a transaction, but also that the plaintiff had in some way actual notice thereof. In every such case the burden is shifted upon the defendants to establish notice.
The first two propositions are in full accord with the general rule applicable to individual indorsers, that, upon proof of the procurement of the indorsement by-fraud, the burden is cast upon the plaintiff to establish that he is a tona fide holder for value. The third con- *105 statutes an exception, founded upon the law merchant.
It now remains to be seen to which of these three classes the case at bar belongs.
The note in question was made by a firm of which Law was a member, indorsed by that firm, then indorsed by Law with his own name, then indorsed with the name of defendants’ firm in the handwriting of Law, and presented by Law in person to the president of the bank for discount. There is no pretense that he represented it to belong to defendants’ firm, or that he expressed a desire that it should be discounted for the benefit of. said firm. On the contrary, it is one of the conceded facts of the case that the proceeds of the discount were paid to him by a check to his individual order. Moreover, the president of the bank, in a certain conversation had with Mason, one of the defendants, on the day of the maturity of the note, was shown to have spoken of it as a discount for Law. True, he denied having made any such remark, but that was a question for the jury. Neither side called Law as a witness.
Upon these facts it is clear that the case does not belong to the class named in the third proposition above stated, and that, if it does not fall within that specified in the first, it certainly falls within the class specified in the second proposition. The most, therefore, that plaintiff could ask, was that the case should be submitted to the jury, and that, in the absence of any proof showing defendants’ assent, the jury should be instructed that the plaintiff was entitled to recover upon proof that it was a bona fide holder for value. The case was submitted to the jury, and they were charged, in substance, that the plaintiff could not recover unless it became the holder of the note in good faith for value, and without knowledge of the character of the indorsement; that it would in law be chargeable *106 with such knowledge, if its president, who acted on behalf of the bank in discounting the note, dealt with Law individually; that if he dealt with him as a partner, plaintiff would not be thus chargeable ; that there was nothing in the law which would draw the suspicion of a person to the note as being out of the usual course of business, because it had been made by a firm, indorsed by an individual member of that firm, and then indorsed by another firm of which he was a member; and that, therefore, if the president dealt with Law as an individual, the plaintiff could not recover; but if he dealt with him as a partner, and as the agent of defendants’ firm, the plaintiff was entitled to recover. There is nothing in this charge, nor in the refusals to charge otherwise, to which an exception will lie. Nor can it be said that the verdict is against the evidence.
But a single exception has been argued relative to the admission of evidence, and that relates to the reception of certain admissions made by the president of the bank on the day the note matured. He was the executive officer of the bank. As such he had discounted the note. On the day of its maturity he called at defendants’ store and asked for Law. Upon being told that the latter was not in, he had a conversation > with Mason, one of the defendants, in the course of which, according to Mason’s version of it, he said that he had called to see Law in order to find out whether the latter would pay the nóte which the bank had discounted for him. His call, being for the very purpose of collecting the note, was in the direct line of his duties as the executive officer of the bank, and the admission he then and there made, by way of explanation, was made concerning a transaction in which he had been throughout, and then still was, the authorized agent of the corporation. Mason’s testimony upon this point was, therefore, neither against section 80 of 2 R. S. 407, nor incompetent for any other reason. *107 Nor was it immaterial. The president had been examined as a witness for the plaintiff, and upon his cross-examination had been interrogated about the matters involved in this conversation^ and had given a different version of the same. Mason’s testimony was therefore admissible, because it contradicted that of the president upon a material point.
The judgment and order should be affirmed, with costs.
Curtis, Ch. J., concurred.